UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
FRITZ CELESTINE,

                Petitioner,

        - against -

MARK MILLER,

                Respondent.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
24-CV-2060 (PKC)

PAMELA K. CHEN, United States District Judge:

Fritz Celestine ("Petitioner") brings this *pro se* petition for writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254, attacking his 2018 state convictions resulting from a multi-victim shooting at a funeral in Brooklyn, New York. For the reasons stated below, Petitioner's petition for writ of *habeas corpus* is denied in its entirety.

**BACKGROUND**

**I.   Relevant Facts**[1]

On the evening of April 27, 2015, Petitioner attended a funeral at a church in Brooklyn with his two brothers, Pierre Celestine ("Pierre") and Daniel Celestine ("Daniel"). (Respondent's Opposing Habeas Petition ("Opp'n"), Dkt. 9, ¶ 5.) Immediately after leaving the funeral, Petitioner and his brothers got into a fight with Sharief Clayton ("Clayton") on the sidewalk outside the church. (*See id.* ¶¶ 5, 28(E)(a)(7)–(8).) Clayton punched Petitioner, who staggered back and

---

[1] As discussed *infra*, Petitioner was convicted of multiple offenses at trial. The Court therefore recites relevant facts in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012) (per curiam) (citing *United States v. Riggi*, 541 F.3d 94, 96 (2d Cir. 2008)); *see also* 28 U.S.C. § 2254(e)(1) (providing that any factual issue determined by the state court is presumed to be correct, unless rebutted by "clear and convincing evidence"). In addition, any citation to Respondent's opposition incorporates by reference the documents cited therein.

nearly fell. (*Id.* ¶ 28(E)(a)(9).) Pierre drew a gun and fired at Clayton. (*Id.* ¶¶ 28(E)(a)(8), (12).) Petitioner, as he got up, drew a gun and fired several shots at Clayton. (*Id.* ¶¶ 28(E)(a)(9), (13).) Daniel, too, joined in the gunfire towards Clayton. (*Id.* ¶ 28(E)(a)(14).) Petitioner's gunfire killed Clayton and a bystander, Ronald Murphy. (*See id.* ¶ 28(E)(a)(27).) Three additional bystanders were wounded as well. (*Id.*) A fourth gunman, Yassir Julio ("Julio"), fired at Petitioner and his brothers. (*Id.* ¶ 28(E)(a)(10).) Petitioner was struck by Julio's gunfire and suffered injuries to his abdomen. (*Id.*) Petitioner then fled the scene with his brothers. (*Id.*)

Two individuals at the funeral, one of them a police officer, heard the gunfire from inside the church and dialed 911. (*See id.* ¶¶ 28(E)(a)(23)–(24).) One bystander, Perez Alcides ("Alcides"), also dialed 911, but he reported to officers at the time that he had not seen the faces of the shooters. (*Id.* ¶ 28(E)(a)(10) n.9.) At about the same time, police responded to a call from 638 East 32nd Street, where they found Petitioner bleeding from gunshot wounds. (*Id.* ¶ 28(E)(a)(28).) Paramedics quickly arrived on the scene, and Petitioner told one of them, "They killed my mother and sister." (*Id.* ¶ 28(E)(a)(29).) Petitioner was subsequently hospitalized for the next four months due to the severity of his injuries. (*Id.* ¶ 28(E)(a)(32).)

On August 31, 2015, and again in September 2015, Alcides reported to Crime Stoppers[2]—a New York City Police Department tipline program that offers monetary rewards for information leading to the arrest and indictment of a violent felon—that he had witnessed the multi-person shooting in question and was able to identify the shooters. (*See id.* ¶ 28(E)(a)(40).) On September 26, 2015, another bystander to the incident, Lord Young ("Young"), also reported to Crime Stoppers that he had witnessed the shooting and was able to identify the shooters. (*See*

---

[2] *See* N.Y. Police Dep't, *Crime Stoppers*, https://www.nyc.gov/site/nypd/services/see-say-something/crimestoppers.page (last visited Aug. 20, 2025).

2

*id.* ¶ 28(E)(a)(42).) On March 30, 2016, both Young and Alcides identified Petitioner in a photo array. (*Id.* ¶ 28(E)(a)(45).) Alcides received a $1,500 reward for his report, but Young did not. (*See id.* ¶ 28(E)(a)(40) n.30; ¶ 28(E)(a)(35) n.27.)

### A.    The Arrest & Charges

On October 30, 2015, Petitioner was apprehended in Tennessee, and on February 25, 2016, he was extradited to New York. (*See id.* ¶¶ 20–21.) Petitioner was charged with two counts of Murder in the Second Degree (N.Y. Penal Law ("N.Y.P.L.") § 125.25(1)), one count of Attempted Murder in the Second Degree (N.Y.P.L. §§ 110.00, 125.25(1)), one count of Assault in the Second Degree (N.Y.P.L. § 120.15(2)), three counts of Criminal Possession of a Weapon in the Second Degree (N.Y.P.L. § 265.03(1)(b)), two counts of Criminal Possession of a Weapon in the Second Degree (N.Y.P.L. § 265.03(3)), and one count of Reckless Endangerment (N.Y.P.L. § 120.25). (*Id.* ¶ 6.)

Although Petitioner disputes the following facts, (*see* Pet., Dkt. 1, at ECF[3] 7), Respondent asserts that during Petitioner's extradition, Detective Michael Gaynor ("Detective Gaynor") advised Petitioner several times that he had a right to counsel and that Detective Gaynor could not speak to Petitioner about the case. (*See* Opp'n, Dkt. 9, ¶¶ 9(A)(8)–(11).) According to Respondent, Petitioner indicated that he understood, but continued to make several statements to Detective Gaynor, including asking why Petitioner had not been arrested when he was at the hospital; asking when any witnesses had come forward (but then saying never mind); asking if the police had obtained "the gun"; asking what the difference was between murder and manslaughter; and saying, "I should have never gone to that funeral to pay my respects." (*Id.*) At a pretrial

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

3

suppression hearing, the New York State Supreme Court held that Petitioner's statements to Detective Gaynor were admissible evidence as they had "unequivocally" been "unsolicited and entirely spontaneous." (Dkt. 9-1, at 15; *see* Opp'n, Dkt. 9, at ECF 42.)

### B. The Trial and Direct Appeals

At trial in the Supreme Court of New York, Kings County (the "Trial Court"), Detective Gaynor testified about the spontaneous statements Petitioner made to him. (*See id.* ¶¶ 28(E)(a)(47)–(51).) The prosecution argued these statements were evidence of Petitioner's consciousness of guilt. (Trial Tr., Dkt. 9-3, at 1864:6–1867:19.) Additionally, without objection, the prosecution introduced testimony from a paramedic that Petitioner had said, "They killed my mother and sister," while receiving medical treatment. (Opp'n, Dkt. 9, ¶ 28(E)(a)(29).) The prosecution further argued that this testimony was probative of Petitioner's potential motive. (Trial Tr., Dkt. 9-3, at 1846:23–1847:25.) Petitioner did not present any witnesses at trial, nor did he testify. (Opp'n, Dkt. 9, ¶ 28(E)(b)(55).) In its summation, the prosecution made several statements to the jury that the prosecution's witnesses were "telling the truth" and had no "axe to grind" or "skin in this game." (Trial Tr., Dkt. 9-3, at 1819:1–1827:2, 1843:1–13, 1864:11–20; Pet., Dkt. 1, at ECF 10.) Petitioner's counsel did not object to these statements.

On October 11, 2018, the jury found Petitioner guilty of two counts of Murder in the Second Degree (N.Y.P.L. § 125.5) and one count of Criminal Possession of a Weapon in the Second Degree (N.Y.P.L. § 265.03). (*See* Opp'n, Dkt. 9, ¶¶ 28(E)(c)(57)–(d)(58).) On November 28, 2018, Petitioner was sentenced to two concurrent sentences of 25 years to life for his murder convictions, as well as 15 years for his weapons possession conviction followed by five years post-release supervision. (*See id.* ¶ 28(E)(d)(59).) On April 5, 2022, Petitioner filed a direct appeal to the New York State Supreme Court, Appellate Division, Second Department ("Appellate Division"). (*See id.* ¶ 60.) The Appellate Division unanimously affirmed Petitioner's judgment

of conviction. *See People v. Celestine*, 171 N.Y.S.3d 377 (N.Y. App. Div. 2022). On November 30, 2022, the New York Court of Appeals denied Petitioner's subsequent motion for leave to appeal. *See People v. Celestine*, 200 N.E.3d 108 (N.Y. 2022).[4]

## II.     Procedural History Relating to Instant *Habeas* Petition

Petitioner currently remains incarcerated in Green Haven Correctional Facility in Stormville, New York. (*See* Pet., Dkt. 1, at ECF 1.) He filed the instant *habeas* petition on March 18, 2024. (*Id.*) On July 11, 2024, the Court granted leave for Petitioner to proceed *in forma pauperis* and ordered Respondent to show cause why a writ of *habeas corpus* should not be issued. (07/11/2024 Dkt. Order.) On October 30, 2024, Petitioner responded to the show cause order. (Opp'n, Dkt. 9.) Petitioner's reply was initially due on November 29, 2024, but the Court subsequently granted two extensions requests, making the reply brief due on April 10, 2025. 0(3/11/2025 Dkt. Order.) To date, the Court has not received a reply brief from Petitioner. The Court therefore proceeds with adjudicating this action based on the original Petition and Respondent's Opposition in response to the Court's show cause order.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that the "district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under AEDPA, the reviewing court may grant *habeas* relief only if the petitioner's claim "was adjudicated on the merits in State court proceedings" and the state court proceedings: "(1) resulted in a decision that was contrary to, or involved an unreasonable

---

[4] On January 31, 2024, Petitioner filed a *pro se* motion with the New York Supreme Court to vacate his judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10. (*See* Resp. Aff., Dkt. 9, ¶ 9(G)(68).) This motion is currently pending. (*See id.*) Petitioner does not raise any of his N.Y. Crim. Proc. Law § 440.10 claims in the instant *habeas* petition.

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d). A claim is "adjudicat[ed] on the merits" if the state court judgment both "(1) disposes of the claim on the merits, *and* (2) reduces its disposition to judgment." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court decision is "contrary to" clearly established federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,'" the state court arrived at an opposite result. *Evans v. Fischer*, 712 F.3d 125, 132 (2d. Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts" of the case. *Id.* at 133 (quoting *Williams*, 529 U.S. at 413). "[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable." *Grayton v. Ercole*, 691 F.3d 165, 174 (2d Cir. 2012); *see also Williams,* 529 U.S. at 410. The writ should be issued only where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). These standards are "difficult to meet, because the purpose of AEDPA is to ensure that federal *habeas* relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as

6

a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citation and internal quotation marks omitted).

Because Petitioner is proceeding *pro se*, the Court construes his Petition liberally and interprets it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and italics omitted). However, the Court "need not act as an advocate for" Petitioner. *Curry v. Kerik*, 163 F. Supp. 2d 232, 235 (S.D.N.Y. 2001) (quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998)).

**DISCUSSION**

**I.      Petitioner's Application Is Timely**

Under AEDPA, *habeas* petitions filed by individuals in custody pursuant to the judgment of a state court are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1) ("Section 2244(d)(1)"). Section 2244(d)(1), as applicable here, provides that the limitation period runs from the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* "[T]he AEDPA limitations period specified in Section 2244(d)(1)(A) does not begin to run until the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or—if the prisoner elects not to file a petition for certiorari—the time to seek direct review via certiorari has expired." *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).

Here, Respondent does not dispute that Petitioner's application is timely. (Opp'n, Dkt. 9, at ECF 31 n.38.) The Court agrees. The one-year statute of limitations under AEDPA began running 90 days after the New York Court of Appeals denied Petitioner leave to appeal on November 30, 2022, *Celestine*, 200 N.E.3d at 108, and would have expired on February 28, 2024. 28 U.S.C. § 2244(d)(1)(A); *Davis v. Lempke*, 767 F. App'x 151, 152 (2d Cir. 2019) (summary order) ("[S]tate judgments are deemed final if no petition for a writ of certiorari has been filed with

7

the [United States] Supreme Court within 90 days" after the state judgment was filed.") (citing *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)).  Accordingly, Petitioner's application, which was filed on February 16, 2024, is timely.  (*See* Pet., Dkt. 1, at ECF 15.)

## II.   Petitioner's *Habeas* Claims

Petitioner puts forward five arguments for his *habeas* claims.  The Court considers each of his arguments in turn.

### A.   Sufficiency of the Evidence

Petitioner argues that the evidence presented at trial was insufficient to find him guilty beyond a reasonable doubt because the two witnesses who identified him as the gunman "were wholly unreliable."  (*See* Pet., Dkt. 1, at ECF 5.)  Petitioner first points to the fact that one of the witnesses, Alcides, was unable to identify him on the night of the shooting and only identified Petitioner as the shooter months later.  (*See id.*)  Petitioner then claims that the other witness, Young, was a "career criminal"[5] who also did not identify Petitioner to the police on the night of the shooting and only did so months later in exchange for a monetary reward.  (*Id.*)

However, Petitioner raised the same argument on direct appeal, and the Appellate Division held that Petitioner's sufficiency of evidence claim was "unpreserved for appellate review" because Petitioner had failed to move for a trial order of dismissal on the basis of that specific claim.  *Celestine*, 171 N.Y.S.3d at 378 (citing *People v. Hawkins*, 900 N.E.2d 946 (N.Y. 2008) and *People v. Jordan*, 160 N.Y.S.3d 117, 118 (N.Y. App. Div. 2022)).  State court decisions that rest on independent and adequate state law grounds, like procedural defaults, are generally unreviewable in federal court.  *See Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("[A] state

---

[5] Young has several prior criminal convictions, including drug-dealing, robbery, and illegal possession of weapons.  (*See* Opp'n, Dkt. 9, ¶ 28(E)(a)(4) n.5.)

court procedural default will bar *habeas* review when 'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996))). A petitioner may only bypass a procedural bar to *habeas* review by demonstrating either "cause for the [procedural] default and prejudice" or that "failure to consider the claims will result in a miscarriage of justice." *Id.* at 294 (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1990)).

Here, Petitioner has not provided any argument or evidence that there was either cause for the procedural default or that the failure to consider the claims would result in a miscarriage of justice. Petitioner thus fails to overcome the bar to warrant review of these claims. Accordingly, *habeas* relief on this ground is denied.

### B.     Inadmissibility of Evidence

Petitioner makes two arguments challenging the admissibility of certain evidence presented at trial. First, Petitioner argues that the Trial Court erred in admitting testimony from Detective Gaynor about incriminating statements that Petitioner spontaneously made while in custody. (*See* Pet., Dkt. 1, at ECF 7.) Petitioner claims these statements were "patently incredible and tailored to overcome constitutional objections." (*Id.*) Second, Petitioner argues that the Trial Court erred in admitting evidence that Petitioner said to a paramedic, "They killed my mother and sister." (*Id.* at ECF 8.) Petitioner claims that these statements could not have been probative of motive because his mother and sister's deaths were "unrelated to the trial incident," "had no clear meaning, relevance, or logical relation to the evidence," and "injected prejudicial speculation into the case." (*Id.*)

The Appellate Division rejected both claims on the merits. As to Detective Gaynor's testimony, the Appellate Division stated that "the record support[ed] the [Trial Court's] determination to credit the testimony of a police detective at the suppression hearing" and the

9

testimony was not "incredible, patently tailored to overcome constitutional objections, or otherwise unworthy of belief." *Celestine*, 171 N.Y.S.3d at 378–79.  As to Petitioner's own statement, the Appellate Division stated that the Trial Court "properly admitted" Petitioner's statements because they were "relevant to the issue of [Petitioner's] motive," and the statements' value "was not substantially outweighed by its potential for undue prejudice."  *Celestine*, 171 N.Y.S.3d at 379.  Having been rejected on the merits, both claims are cognizable on federal *habeas* review, but subject to AEDPA deference.

Evidentiary errors are rarely a basis for *habeas* relief.  *See Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (citations omitted).  "[W]hether evidence is inadmissible on relevancy grounds is a question of state law."  *See Tyrell v. Lee*, No. 11-CV-3348 (CS) (LMS), 2015 WL 9666334, at *8 (S.D.N.Y. Dec. 14, 2015).  "[E]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus.  Rather, the writ would issue *only* where petitioner can show that the error deprived [him] of a *fundamentally fair* trial."  *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (citations omitted).  A state law evidence violation becomes a federal constitutional violation only if "the evidence was . . . 'so extremely unfair that its admission violate[d] fundamental conceptions of justice.'"  *Vega*, 669 F.3d at 126 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (2010)).

Here, it was entirely reasonable for the Appellate Division to find that the Trial Court acted within its discretion to admit Detective Gaynor's testimony.  The statements, although made while Petitioner was in police custody, were not a product of interrogation or questioning that could have reasonably led to an inculpatory response; the evidence presented at both the pretrial suppression hearing and at trial supported the finding that Petitioner's statements were voluntary and spontaneous.  Detective Gaynor repeated Petitioner's right to remain silent several times.

10

Furthermore, Petitioner's statements to Detective Gaynor were probative of a consciousness of guilt. *See People v. Case*, 113 N.Y.S.2d 383, 385 (N.Y. App. Div. 2014) (noting that "[e]ven equivocal consciousness-of-guilt evidence may be admissible so long as it is relevant, meaning that it has a tendency to establish . . . that [the] defendant was aware of guilt" (quoting *People v. Bennett*, 593 N.E.2d 279, 283 (N.Y. 1992))). Thus, admission of Detective Gaynor's testimony did not deprive Petitioner of a fair trial, and the Appellate Division's denial of this claim was not an unreasonable application of established federal law.

The Appellate Division also reasonably found that the Trial Court acted within its discretion in admitting Petitioner's statement to the paramedic. This statement was probative of a potential motive for Petitioner's crimes, namely, that Petitioner (and his brothers) got into a fight with, and ultimately shot, Clayton because Petitioner believed that Clayton had killed his mother and sister. Evidence of motive is relevant and admissible under New York law. *See People v. Livrieri*, 6 N.Y.S.3d 5, 27 (N.Y. App. Div. 2015). And, here, there was no prejudice to Petitioner from the statement that could outweigh its potential probative value. Thus, the Trial Court's admission of Petitioner's statement to the paramedic did not deprive Petitioner of a fair trial, and the Appellate Division did not unreasonably apply established federal law in denying this claim.

Accordingly, *habeas* relief is denied on the admission-of-evidence grounds that Petitioner raises.

### C.   Prosecutorial Misconduct

Petitioner claims that he was deprived of a fair trial because the prosecution made improper statements during summation. (*See* Pet., Dkt. 1, at ECF 10.) However, the Appellate Division held that Petitioner's claim was "unpreserved for appellate review" and otherwise "without merit." *Celestine*, 171 N.Y.S.3d at 379 (citing N.Y. Crim. Proc. Law § 470.05(2) and *People v. Sylvestre*, 116 N.Y.S.3d 98, 100 (N.Y. App. Div. 2019)); *see Sylvestre*, 116 N.Y.S.3d at 100 (holding that

11

objections to a prosecutor's summation remarks were unpreserved for appellate review when defendant "either made only general objections, failed to request further curative relief when one of his objections was sustained, or did not move for a mistrial on the grounds now claimed."). As explained *supra*, the Appellate Division's reliance on Petitioner's procedural default under a state rule is an adequate and independent state law ground. Thus, Petitioner's claim may not be reviewed by this Court. Moreover, Petitioner has again failed to offer any argument or evidence regarding cause or prejudice that would overcome this procedural bar. For this reason alone, the Court denies *habeas* relief on this ground.

Furthermore, to the extent the Appellate Division also denied Petitioner's argument about the prosecution's closing statement on the merits—a decision that is entitled to AEDPA deference—the Court finds that the Appellate Division acted reasonably. The Appellate Division held that the "challenged remarks were either fair comment on the evidence, a fair response to the issues raised in defense counsel's summation, or not so egregious as to have deprived [Petitioner] of a fair trial." *Celestine*, 171 N.Y.S.3d at 379 (citation omitted). This decision is consistent with well-established federal law. "A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). "To amount to constitutional error, . . . the prosecutor's comments must represent 'egregious misconduct.'" *Stewart v. New York*, No. 20-CV-0329 (JMA), 2021 WL 4311054, at *21 (E.D.N.Y. Sep. 22, 2021) (citations omitted). Here, Petitioner's assertion that the prosecution "[a]rgu[ed] facts not in evidence" and used "appellant's pre-arrest against him" is without merit. (Pet., Dkt. 1, at ECF 10.) The prosecution's statements that their witnesses were "telling the truth" and had no "axe to grind" or "skin in this game," (Trial Tr., Dkt. 9-3, at 1819:1–1827:2, 1843:1–

13, 1864:11–20; Pet., Dkt. 1, at ECF 10), were permissible closing arguments that invited the jury to make the credibility determinations urged by the prosecution based on the jury's assessment of the witnesses, including whether they had any reason to lie. These statements do not amount to a due process violation. Therefore, the Appellate Division's decision denying appeal on this basis was not contrary to clearly established federal law.

Accordingly, *habeas* relief on this ground is denied.

### D. Excessive Sentence

Finally, Petitioner argues that his sentence is excessive. (*See* Pet., Dkt. 1, at ECF 16.) An excessive sentence claim, however, does not provide grounds for federal *habeas* relief where the sentence is within the range prescribed by state law. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam) (citing *Underwood v. Kelly*, 692 F.Supp. 146 (E.D.N.Y. 1988)). The statutorily permissible range of indeterminate incarceration for Murder in the Second Degree (N.Y.P.L. § 125.25(1)) is from a minimum of 15 years to life to a maximum of 25 years to life. N.Y.P.L. §§ 70.00(2)(a), (3)(a)(i). s Because Petitioner's sentence of 25 years to life is within these statutory bounds, the Court cannot grant any relief based on Petitioner's excessive sentence claim.

Accordingly, *habeas* relief on this ground is denied.

## CONCLUSION

For the foregoing reasons, Petitioner's request for writ of *habeas corpus* under 28 U.S.C. § 2254 is denied in its entirety. No certificate of appealability is granted with respect to Petitioner's claims, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Clerk of Court is respectfully directed to enter judgement and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 3, 2025
       Brooklyn, New York